IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | | |
|---|---|---|
| **NEW YORK ENERGY, LLC** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No.:  1:21-CV-69 (Kleeh) |
| | ) | |
| **ETTA MAE INC.,** and | ) | |
| **GREGORY KENT COLLINS** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

ELECTRONICALLY FILED
05/26/2021
U.S. DISTRICT COURT
Northern District of WV

## VERIFIED COMPLAINT

The Plaintiff, New York Energy, LLC ("NYE"), by counsel, states as follows for its Complaint against the Defendants, Etta Mae Inc. ("EMI") and Gregory Kent Collins ("Collins") (collectively, the "Defendants").

## THE PARTIES

1. New York Energy, LLC, is a limited liability company with a principal place of business located at One World Trade Center, 85th Floor, New York, NY 10007.

2. NYE's member is an individual domiciled in the State of Michigan.

3. Upon information and belief, Etta Mae Inc., is a Tennessee corporation with its principal place of business located at 725 South High Street, Unit 23, Hillsboro, OH 45133.

4. EMI's Registered Agent is identified with the Tennessee Division of Business Services as Christopher Collins.

5. Gregory Kent Collins is an individual resident of the State of Ohio who resides at 725 South High Street, Unit 23, Hillsboro, OH 45133.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over these parties and this civil action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTUAL ALLEGATIONS**

8. In the Summer of 2020, Collins approached NYE about the opportunity to purchase equipment on the Equipment List attached as **Exhibit A** from Brooks Run Mining Company, located in Sutton (Braxton County), West Virginia (the "Equipment").

9. Collins represented to NYE that he specializing in the refurbishing and resale of heavy machinery and equipment.

10. Collins also represented to NYE that, if NYE funded the purchase of the Equipment, Collins could get the Equipment sold within 30 to 45 days.

11. In fact, Collins was so confident in his abilities that he told NYE that, if it took Collins longer than 30 days to sell the Equipment, that NYE would have "made a bad deal."

12. Collins represented to NYE that any money NYE provided the Defendants to purchase the Equipment would be considered an investment in the Defendants and the joint enterprise to purchase the Equipment and sell the same for a profit.

13. Indeed, Collins has subsequently represented to multiple third-party counterparts that if his "investors" (referring to NYE) would "calm down" for a brief period, then the Defendants would be able to sell the Equipment without issue.

14. NYE agreed to provide the Defendants $250,000.00 to fund the purchase of the Equipment, as evidenced by the wire transfer confirmation attached as **Exhibit B**.

15. In exchange for the $250,000.00 capital infusion (the "Investment Proceeds"), the Defendants agreed to repay NYE the first $310,000.00 from the sale of Equipment, and then to split the proceeds of the sale of the remainder of the Equipment by retaining 70% of the gross proceeds and paying 30% to NYE.

16. The structure of repayment of the Investment Proceeds illustrates a joint venture between NYE and the Defendants by which a partnership was formed.

17. After receipt of the $250,000.00 wire from NYE, the Defendants purchased the Equipment.

18. The Defendants sold some of the Equipment and repaid NYE $70,000.00.

19. Since then, however, the Defendants have acted without regard for the interests of NYE in the Equipment or the joint venture.

20. In fact, the Defendants have told third parties that they purchased the Equipment using the "life savings" of Collins.

21. Further, the Defendants have represented to third parties and to NYE that the Defendants *alone* purchased, owned, and controlled the Equipment.

22. The Defendants have also made agreements to transfer some of the Equipment to third parties without regard for NYE's interest in the Equipment or partnership.

23. Indeed, the Defendants sold some of the Equipment to Southern Minerals and Eddie Asbury for approximately $38,000.00 in July of 2020 without receiving any proceeds from the sale.

24. In fact, Southern Minerals specifically withheld those proceeds from the Defendants due to an unrelated deal between a third-party company for which Collins acted as a third-party agent.

25. When the Defendants informed NYE of same (which was *after* the sale took place), NYE recommended that the Defendants file a suit to recover the purchase price, the Defendants refused to do so, putting NYE's Investment Proceeds in jeopardy without the consent of NYE.

26. In fact, very shortly after NYE made this recommendation to his partners, the Defendants, Collins stopped returning all communications from NYE.

27. Additionally, the Defendants told NYE that the Defendants sold the CAT Model M3 Miner which was part of the Equipment to Carpenter's Repair, Inc., in Lake, West Virginia, for $100,000.00 in January 2021, with proceeds due upon receipt of payment from Buckhannon Coal Company.

28. Business records, however, demonstrate that Carpenter's Repair, Inc., actually sold the M3 Miner to Coronado IV, LLC, in Beckley, West Virginia, on December 21, 2020 for $164,996.00.

29. To date, NYE has not received any proceeds from the sale of the M3 Miner, and the Defendants told NYE on several occasions, dating back to January 2021 that NYE would receive the sales proceeds "in a few weeks."

30. Ultimately, as discussed above, the Defendants have stopped communicating with NYE altogether by refusing to respond to any e-mails, letters, texts, or phone calls from NYE.

31. The Defendants have also expressly refused NYE's repeated requested to inspect, or even view, any portion of the Equipment.

32. As of the date of the filing of this Complaint, NYE is uncertain whether EMI exists as a separate entity. While EMI has a bank account in its name (which usually cannot occur without proof of independent corporate existence), there is no EMI registered with the State of Kentucky, the State of Ohio, or the State of West Virginia.

33. While there is an EMI registered in the State of Tennessee, its principal place of business is identified as Jackson, Tennessee, which is more than 7 hours from Hillsboro, Ohio.

34. As a result, if EMI does not exist as a separate entity, then EMI is a *de facto* sole proprietorship of Collins.

## COUNT ONE: DECLARATORY JUDGMENT

35. The allegations set forth in Paragraphs 1 through 34 are incorporated by reference as if set forth fully herein.

36. NYE and the Defendants agreed orally to enter into a joint enterprise and venture for the purchase and sale of the Equipment.

37. In particular, NYE would provide the Investment Proceeds to fund the purchase of the Equipment, and the Defendants would sell the Equipment.

38. In exchange for NYE's part in the partnership, the Defendants would pay NYE the first $310,000.00 from the sale of Equipment and would then provide NYE 30% of the gross proceeds of the sale of the remaining Equipment.

39. As such, NYE and the Defendants orally entered into a partnership agreement concerning the purchase and sale of equipment in Sutton, West Virginia, subject to the laws governing partnerships in the State of West Virginia.

40. Because there was no agreement between the parties as to whether any of the parties would be a general or limited partner, NYE and each of the Defendants are considered general partners of the partnership, each with a 50% stake in the partnership and the partnership assets.

WHEREFORE, NYE respectfully requests the entry of an Order declaring that NYE and the Defendants entered into a partnership for the purchase and sale of the Equipment, that the Defendants were to repay NYE the first $310,000.00 from the sale of the Equipment and then pay

NYE 30% of the gross proceeds of the sale of the remaining Equipment, and that, as such, the Equipment was owned at all relevant times by the partners in equal share (50% by NYE and 50% by the Defendants).

## COUNT TWO: INJUNCTIVE RELIEF

41. The allegations set forth in Paragraphs 1 through 40 are incorporated by reference as if set forth fully herein.

42. Based on the agreement between NYE and the Defendants to form a partnership to purchase and sell the Equipment, NYE owned, at all relevant times, a 50% interest in the Equipment, and the Defendants owned the remaining 50% interest in the Equipment.

43. As such, the Defendants could not unilaterally dispose of the Equipment without notice to and consent of NYE.

44. Additionally, NYE has, at all times, a material right to view and inspect the Equipment and to make efforts to market the Equipment for sale subject to the agreement of the Defendants.

45. The Defendants, however, have sold at least two (2) pieces of Equipment without the consent of NYE and without payment of the sales proceeds to NYE.

46. Moreover, the Defendants specifically refuse to allow NYE to view or inspect the Equipment, let alone take any efforts to market the Equipment for sale.

47. These actions are in direct conflict of the Defendant's duties to NYE as their partner and strip NYE of its ownership rights to the Equipment.

48. NYE has been damaged and continues to be damaged by the conduct of the Defendants.

49. Because the Defendants, upon information and belief, have little or no assets beyond their 50% interest in the Equipment, a money judgment would not be sufficient to compensate NYE for its loss.

50. Indeed, given NYE's own 50% interest in the equipment, NYE will suffer irreparable harm if the Defendants are permitted to continue to withhold access to the Equipment and/or sell the Equipment without NYE's knowledge or consent.

51. Given the above, NYE is likely to succeed on the merits, as the Defendants have elsewhere admitted (to both NYE and third parties) that NYE was an investment partner concerning the Equipment.

52. In this instance, because the Defendants possess the Equipment without any oversight and without permitting NYE any involvement in the continued inspection, marketing, and sale of the Equipment, equity strongly favors NYE, as the Defendants are actively preventing NYE from exercising material rights (including withholding sales proceeds from the sale of Equipment) with respect to the Equipment while NYE is simply awaiting repayment of its Investment Proceeds and the agreed-upon percentage of profit above repayment of the same.

53. The actions by Defendants amount to a trespass against NYE's rights to the Equipment, which is, under West Virginia law, a crime. As such, the public policy of the State of West Virginia clearly demonstrates that granting an injunction is in the public interest.

WHEREFORE, NYE respectfully requests the entry of an Order against the Defendants granting injunctive relief as follows: (a) requiring the Defendants to immediately pay to NYE any proceeds from sale of Equipment previously withheld from NYE; (b) requiring the Defendants to provide the current location of each item of Equipment and allow NYE to physically inspect same; (c) requiring the Defendants to disclose any and all discussions concerning any piece of Equipment

that will or may lead to a sale of any piece of Equipment; (d) to prohibit the Defendants from selling any additional pieces of Equipment without the express written consent (after an express written request) of NYE; and (e) the prohibit any other disposition of the Equipment by the Defendants that would materially alter the status or value of the Equipment without the express written consent of NYE.

### COUNT THREE: BREACH OF CONTRACT (PARTNERSHIP AGREEMENT)

54. The allegations set forth in Paragraphs 1 through 53 are incorporated by reference as if set forth fully herein.

55. By the above, NYE and the Defendants entered into a partnership agreement requiring the Defendants to repay the Investment Proceeds to NYE from the sale of Equipment and then, after payment of the Investment Proceeds, to pay NYE 30% of the gross sales proceeds from any remaining Equipment.

56. The Defendants valued the Equipment at **no less** than $607,000.00 (gross to the partnership).

57. As a result, the Defendants represented to NYE that it would recover at least $399,100.00 from the sale of the Equipment.

58. To date, NYE has only received $70,000.00.

59. The Defendants have breached the partnership agreement by (a) selling pieces of Equipment without the knowledge and/or consent of NYE; and (b) selling pieces of Equipment without repaying the proceeds to NYE.

60. As a result of the breach, NYE has suffered a loss of at least $329,100.00.

WHEREFORE, NYE respectfully requests the entry of a money judgment against the Defendants for the sum of $329,100.00, together with pre- and post-judgment interest at the prevailing judgment rate from the date of the filing of this Complaint until paid.

### **COUNT FOUR: BREACH OF CONTRACT (PROMISSORY NOTE) / UNJUST ENRICHMENT**

61. The allegations set forth in Paragraphs 1 through 60 are incorporated by reference as if set forth fully herein.

62. Count Four is plead in the alternative to Count Three.

63. If this Court does not find sufficient evidence that a partnership agreement existed between NYE and the Defendants, then NYE asserts the existence of a promissory note.

64. NYE clearly provided the Defendants with $250,000.00 that the Defendants used to purchase Equipment.

65. The Defendants knew that NYE expected to be repaid $310,000.00 as evidenced by the fact that the Defendants in fact repaid NYE $70,000.00 to date.

66. NYE is not a bank, savings and loan association, or credit union.

67. NYE acted in reliance on the Defendants' representations that the money would be repaid within 45 days in providing the money to the Defendants.

68. That the Defendants have not repaid NYE the $310,000.00 is a breach of said note.

69. NYE has suffered damages of $240,000.00 as a result of the Defendants' failure to repay the balance.

70. Alternatively still, to the extent the Court does not impose a promissory note/contractual obligation on the Defendants, the Defendants have been unjustly enriched by their receipt of the $250,000.00 and must be required to repay the balance due of $240,000.00.

WHEREFORE, NYE respectfully requests the entry of a money judgment against the Defendants for $240,000.00 together with interest at the prevailing judgment rate from the date of the filing of this Complaint until paid.

## COUNT FIVE: ACTUAL OR CONSTRUCTIVE FRAUD

71. The allegations set forth in Paragraphs 1 through 70 are incorporated by reference as if set forth fully herein.

72. The Defendants made various material representations to NYE in an effort to induce NYE to provide the Defendants with $250,000.00.

73. Among those material representations, the Defendants represented that (a) they were experienced in the purchase, refurbishment, and sale of heavy equipment; (b) they would be able to sell the Equipment within 45 days; and (c) that NYE would be repaid promptly from the sale of the Equipment.

74. Based on the conduct of the Defendants, it is clear that each of those representations was not true.

75. The Defendants have sold some of the Equipment without receiving proceeds of the sale prior to delivery, and, given the state and nature of the Equipment, this is something an experience seller would not generally do without written credit terms.

76. The Defendants have still not sold much of the Equipment despite the passage of nearly one (1) year since purchase.

77. The Defendants have sold multiple pieces of the Equipment with repayment to NYE.

78. The Defendants knew or had reason to know that the representations were not true.

79. Based on these representations, NYE, which justifiably relied on these representations, provided the $250,000.00 needed for the Defendants to purchase the Equipment.

80. The Defendants have only repaid NYE $70,000.00 of the $250,000.00.

81. As a result, NYE lost at least $180,000 as a result of the Defendants' fraud, exclusive of the $60,000.00 guaranteed repayment above the $250,000.00 or the profit-sharing beyond that.

82. The Defendants' fraud was made with reckless indifference and blatant disregard for the rights of NYE.

83. As a result, NYE is also entitled to recover punitive damages from the Defendants.

WHEREFORE, NYE respectfully requests the entry of a money judgment against the Defendants for $329,100.00, plus punitive damages in an amount this Court believes is appropriate, and pre- and post-judgment interest at the prevailing judgment rate from the date of the filing of this Complaint until paid.

DATED:  May 26, 2021.                                             NEW YORK ENERGY, LLC


                                                                  By /s/ Travis A. Knobbe
                                                                       Counsel

Travis A. Knobbe, Esq. (WVSB # 13123)
Spilman Thomas & Battle, PLLC
One Oxford Centre, Suite 3440
301 Grant Street
Pittsburgh, PA 15219
(T):    412.325.3311
(F):    412.325.3324
Email: tknobbe@spilmanlaw.com
*Counsel for New York Energy, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | | |
|---|---|---|
| NEW YORK ENERGY, LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.:   1:21-CV-69 (Kleeh) |
| ETTA MAE INC., and<br>GREG COLLINS | ) | |
| *Defendant.* | ) | |

## VERIFICATION

I, Omar Sheikh, Member and Authorized Agent of New York Energy, LLC, do hereby verify under penalty of perjury, that the allegations set forth in the Complaint to which this verification is attached are true and correct to the best of my information, knowledge, and belief.

Omar Sheikh, Member
New York Energy, LLC

Taken, sworn to, and subscribed before me this 26 day of May 2021.

Notary Public

GREGORY A. GABBARA
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires August 10, 2021
Acting in the County of Oakland



12